UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| KEITH C., | ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | 2:17-cv-00436-NT |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) ) ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, and for Medicare benefits under the Medicare Qualified Governmental Employee program, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments, but retained the functional capacity to perform substantial gainful activity through the dates for which he was covered under the programs. Defendant, therefore, denied Plaintiff's request for benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' written arguments, I recommend the Court affirm the administrative decision.

## The Administrative Findings

This matter is before the court following multiple administrative and court-ordered remands for refinement of the residual functional capacity analysis. The Commissioner's final decision is the January 27, 2016, decision of the Administrative Law Judge. (ALJ

Decision, ECF No. 10-11.)[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of degenerative disc disease of the lumbar spine, L4 – 5 disc herniation and annular tear, depression and obesity. (ALJ Decision ¶ 4 – 5.) The ALJ further found Plaintiff has the residual functional capacity (RFC) to perform light-exertion work, and to stand, walk and sit for 6 hours each in an 8 hour day, provided he is able to change positions every 2 hours for 1-2 minutes before resuming the original position to alleviate postural discomfort, and provided he never is required to negotiate certain hazards, obstacles and environments, or assume certain postures. As to Plaintiff's mental RFC, the ALJ determined that Plaintiff can understand, remember and carry out simple, repetitive instructions and can persist at that level of complexity for 8 hours a day, 5 days a week consistently; can interact with the general public, co-workers and supervisors; and can adapt to routine changes in the work setting.[2] (*Id.* ¶ 6.)

## Standard of Review

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record

---

[1] Because the Appeals Council found no reason to review that decision (ECF No. 10-11, R. 947), the final decision for review is the ALJ's January 27, 2016, decision.

[2] The ALJ determined that Plaintiff engaged in substantial gainful activity during two quarters in 2015, which finding Plaintiff contests on the ground that the work accommodated his disability. However, the finding does not require further proceedings because the claims before the Court involve earlier periods and Defendant does not rely on the finding to support the ALJ's step 5 determination.

contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion

Plaintiff argues the ALJ erred because she (1) failed to account adequately for limitations in concentration, persistence, and pace arising from the combined effect of depression and chronic pain; (2) rejected a treating source opinion without good reason; (3) assessed the degree of impairment caused by obesity without any expert guidance; (4) found Plaintiff engaged in substantial gainful activity in an accommodated job; (5) failed to comply with the most recent order of remand; and (6) failed to weigh or consider a Maine Public Employees Retirement System disability determination and the nurse practitioner opinion on which it was based.

1. **Concentration, persistence, and pace**

According to Plaintiff, the ALJ failed to consider the extent to which Plaintiff's chronic pain exacerbates the concentration, persistence, and pace impairment caused by Plaintiff's depression. (Statement of Errors at 7 – 10.) Plaintiff argues the ALJ's finding of moderate impairment required the ALJ to find that Plaintiff's mental RFC precludes

working at "pace." (*Id.* at 9 – 10.)

The ALJ based her findings regarding Plaintiff's mental limitations principally on the hearing testimony of Ira Hymoff, Ph.D.[3] (ALJ Decision, R. 965, 973; Def.'s Response at 3.) The ALJ also observed that Plaintiff's "treating physicians have not opined that his ability to maintain attention and concentration [on] work tasks … is significantly compromised by pain and/or prescribed medication." (R. 965, citing Exs. 15F, 19F, ECF No. 10-8.) Furthermore, the ALJ noted that imaging-related findings have been characterized as mild, that Plaintiff has been able to engage in a variety of activities of daily living such as camping, fishing, yardwork, motorcycling, and biking, and that the longitudinal approach to treatment was conservative. (R. 968, 970.) Defendant has also observed that Plaintiff's treating provider, Michael Totta, M.D., characterized the degree of Plaintiff's limitation from pain as a "motivational" issue.[4] (Response at 4 – 5, citing Ex. 14F, R. 720, Ex. 18F, R. 744 – 45.)

Given the record before the Court, the ALJ's decision not to impose a restriction that precluded working at simple tasks at "pace" is supportable. The ALJ considered all of the relevant evidence, including both the medical evidence and the evidence of Plaintiff's activity level, and determined that a limitation for pace was not warranted. "Issues of

---

[3] Dr. Hymoff stated that Plaintiff's depressive feelings were most likely "connected to the restrictions he was feeling from his physical discomfort" (Hr'g Tr., ECF No. 10-11, R. 1029); resulted in "mild to moderate" limitation in concentration, persistence, and pace (R. 1031); were difficult to sort out in terms of the confluence of depression and physical pain (R. 1032); but "should not be a problem" if the mental demands were limited to "simple repetitive tasks." (R. 1033.)

[4] According to Dr. Totta, "there is no objective way to define this" and Plaintiff's "medications will not significantly alter his mental status." (R. 720.)

4

credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." *Rodriguez v. Celebrezze*, 349 F.2d 494, 496 (1st Cir. 1965). *See also Shaw v. Sec'y of HHS*, No. 93–2173, 1994 WL 251000, * 4, 1994 U.S. App. LEXIS 14287, *14–15 (1st Cir. 1994) (unpublished) ("Where the facts permit diverse inferences, we will affirm the [Commissioner] even if we might have reached a different result.").

2. **Treating source opinion**

Plaintiff's treating source, Patrick Pierre, M.D., opined in August 2011 that Plaintiff cannot stand or walk for as many as two hours in an eight-hour workday, has difficulty standing for longer than 30 minutes, and must periodically alternate between sitting and standing due to pain and discomfort. (Statement of Errors at 11.) Plaintiff contends that because the date last insured was in 2011, Dr. Pierre's 2011 opinion should control,[5] and that the expert testimony obtained at Plaintiff's July 2015 hearing from non-examining medical expert, Leonard Rubin, M.D., did not constitute a "good reason" for the ALJ to reject Dr. Pierre's opinion. (*Id.* at 11 – 12.) Defendant argues that, in addition to relying on the hearing testimony provided by Dr. Rubin, the ALJ stated good reasons for not accepting Dr. Pierre's opinion, including that the record did not support the degree of limitation found by Dr. Pierre, the lack of significant findings or treatment in the records associated with Dr. Pierre's care, and the lack of a contemporaneous examination.[6]

---

[5] In 2011, Dr. Pierre opined in the same medical source statement that Plaintiff's "attention and concentration is not compromised." (Ex. 19F, R. 748.)

[6] In the office note associated with the medical source statement, Dr. Pierre stated "[t]here was no physical exam today." (Ex. 25F, R. 885, ECF No. 10-9.) In an office note for a physical examination performed

(Response at 6 – 7.)

At the hearing, Dr. Rubin testified that he would endorse the physical RFC findings of Donald Trumbull, M.D. (Ex. 5F, ECF No. 10-7), made in 2007, understanding that the limitation assessed by Dr. Trumbull is that Plaintiff can sit for as long as six hours or stand for as long as six hours in a workday, provided that every two hours he has the ability to move around for 1 to 2 minutes to alleviate pain.[7] (R. 1023.) Dr. Rubin also discussed the 2011 source statement of Dr. Pierre, who opined that Plaintiff could not stand for 2 hours in a workday and, if seated, would need to alternate his position periodically. (R. 1025, discussing Ex. 19F.) While the parties dispute the proper interpretation of Dr. Rubin's testimony, the ALJ supportably construed the opinion as supportive of Dr. Trumbull's opinion. (R. 973 – 74, 976 – 77.) The ALJ also supportably determined that Dr. Pierre's opinion was inconsistent with the overall medical record, including the contemporaneous records.

In her discussion of whether the record supported the need for a "sit/stand option," the ALJ placed great weight on the opinion evidence offered by Dr. Rubin and, by extension, Dr. Trumbull. (R. 973 – 974.) The ALJ gave "only some weight" (R. 975) to

---

two months later, on October 18, 2011, Dr. Pierre described Plaintiff as reporting "no particular complaints or concerns" and "some musculoskeletal pain." (Ex. 25F, R. 883.)

[7] In his physical RFC finding, Dr. Trumbull wrote, "Needs to change position q 2/hour, 1-2 min to alleviate pain, stiffness." (Ex. 5F, R. 485.) Plaintiff argues the "q" means "quarter," such that Dr. Trumbull should be interpreted as finding that Plaintiff needs to change position 4 times. (Statement of Errors at 5.) Plaintiff's argument is not convincing. Use of "q" is typically a reference to the Latin "quaque," which prescribes a quantity or rate, as in each day/daily. Thus, Dr. Trumbull's shorthand can reasonably be understood to describe the need to change position at the rate of "2/hour" or twice per hour. The ALJ, therefore, did not mischaracterize Dr. Trumbull's opinion as Plaintiff argues.

6

the opinion of Dr. Totta, noting the equivocal nature of his opinions, and "little weight" (R. 976) to the opinion of Dr. Pierre, observing that Dr. Pierre did not perform a contemporaneous examination, appeared to rely on subjective reports of symptoms, and assessed a severe restriction on Plaintiff's ability to stand that did not appear have support in the medical record.

In sum, a review of the record reveals the ALJ considered all of the relevant medical evidence, and articulated sound reasons not to adopt the treating source opinion of Dr. Pierre. Accordingly, Plaintiff's argument that the ALJ erred when she did not adopt Dr. Pierre's opinion is unavailing.

3. **Obesity**

Because the ALJ found that obesity is a severe impairment, but the Disability Determination Services consulting physicians did not include it as a severe impairment, Plaintiff argues the ALJ could not make a finding inconsistent with Dr. Pierre's opinion about Plaintiff's ability to stand, walk and sit, without judging a matter entrusted to experts. (Statement of Errors at 13.) Defendant contends the ALJ did not err because the treating sources did not base their RFC source statements on the limiting impact of obesity. (Response at 9.)

Defendant's administrative rulings include a commitment to evaluate the limiting impact that obesity has on social security claimants. *See* SSR 02–1p, *Titles II and XVI: Evaluation of Obesity* (Sept. 12, 2002). The Ruling recognizes that obesity is "a risk factor that increases an individual's chances of developing impairments in most body systems" and "commonly leads to, and often complicates, chronic diseases of the cardiovascular,

7

respiratory, and musculoskeletal body systems." 2002 WL 34686281, at *3. The Ruling provides that obesity will be considered in connection with the sequential evaluation process at step 2 and step 3, and also as part of the assessment of a claimant's residual functional capacity and readiness to perform work activity in connection with step 4 and step 5. *Id.* The standards for claim evaluation require the adjudicator to make an assessment "of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." *Id.* at *6. Consideration of obesity is not subject to heightened demands that require protracted discussion. "As with any other impairment," the Commissioner promises that adjudicators "will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." *Id.* at *7.

The ALJ recognized that obesity was a relevant factor, found it to be a severe impairment at step 2, and appropriately considered its import in the assessment of Plaintiff's RFC. In her RFC discussion, the ALJ expressed the reasonable view that Plaintiff's obesity is material to his musculoskeletal issues. She concluded, however, that the record related to obesity did not require a different analysis of Plaintiff's functional limitations. The ALJ explained there was "no indication that obesity exacerbates the claimant's conditions beyond the extent discussed" or was "otherwise disabling." (R. 971.) The ALJ thus acknowledged and assessed the potential impact of Plaintiff's obesity on his functional ability, and provided a reasoned explanation for her conclusion that the obesity was not disabling.

8

### 4. Finding Plaintiff performed substantial gainful activity in 2015

Plaintiff performed part time work in several years during the period of alleged disability. In 2015, work Plaintiff performed for the Masonic Lodge twice resulted in quarterly earnings that would qualify as substantial gainful activity under Defendant's regulations. The ALJ determined that Plaintiff in fact performed substantial gainful activity in two quarters of 2015. (R. 962 – 63.) The work, however, was accommodated. Specifically, Plaintiff testified that he performed janitorial work at his own schedule, never for more than four or five hours in a day, and he was able to lie down when necessary. (R. 1042.)

Regardless of the merit of Plaintiff's argument challenging the ALJ's finding, the ALJ's finding regarding Plaintiff's substantial work activity in 2015 does not require a different result or further proceedings. The ALJ made her determination following an analysis of each step of the sequential process, and the record lacks any evidence that the Step 1 finding informed the ALJ's ultimate determination regarding Plaintiff's alleged disability. Accordingly, remand is not warranted. *Montgomery v. Berryhill*, No. 2:16-cv-126, 2017 WL 2191587, at *5 (D. Vt. May 18, 2017).

### 5. Compliance with remand order

In its January 28, 2015, Order, in the matter of *Cook v. Colvin*, No. 2:14-cv-00282-GZS, the Court directed Defendant "to obtain medical expert review of the record with an opinion as to Plaintiff's physical functional limitations prior to December 31, 2011, and in particular, whether he would have required a sit/stand option and at what intervals." Plaintiff contends Defendant failed to comply with the Court's order because Dr. Rubin

did not actually provide an opinion regarding Plaintiff's limitations. (Statement of Errors at 16.) Defendant argues the ALJ satisfied the requirements of the order, given that Dr. Rubin adopted the opinion of Dr. Trumbull. (Response at 13 – 14, citing Hr'g Tr., R. 1021 – 22, referencing Ex. 5F, R. 485.) The record establishes that Dr. Rubin testified during the hearing and endorsed and adopted Dr. Trumbull's findings. As explained above, the ALJ's RFC finding, based on the opinions of Drs. Rubin and Trumbull, is supported by substantial evidence on the record. Plaintiff's argument that the ALJ failed to obtain a further expert review, therefore, is not persuasive.

### 6. Consideration of Maine Public Employees Retirement System Decision

Plaintiff argues Defendant did not comply with Social Security Ruling 06-3p because Defendant failed to consider appropriately the disability determination of the Maine Public Employees Retirement System and related records. (Statement of Errors at 16 – 17.) According to Plaintiff, the ALJ did not even consider the record associated with the determination. (*Id.*, citing R. 428, ECF No. 10-6, and R. 1061, ECF No. 10-11.)

Defendant argues the ALJ appropriately considered the determination, but gave it no significant weight. (Response at 10.) Defendant further argues there is no requirement that Defendant develop the record further to understand better the reasons for the state determination because the ALJ had a sufficient record with which to determine Plaintiff's disability claim. (*Id.* at 11.)

Social Security Ruling 06-3p instructed[8] the ALJ to consider opinions from non-

---

[8] Defendant rescinded the Ruling for claims submitted on or after March 27, 2017, explaining that the Ruling is "inconsistent or unnecessarily duplicative with our recent final rules, Revisions to Rules

acceptable medical sources and explain the weight given to them "or otherwise ensure that the discussion of the evidence ... allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Jessica B. v. Berryhill*, No. 1:17-cv-294-NT, 2018 WL 2552162, at *6 (D. Me. June 3, 2018) (quoting SSR 06-3p, reprinted in West's Social Security Reporting Service Rulings 1983-1992 (Supp. 2016), at 333). Plaintiff was awarded disability retirement benefits by the Maine Public Employees Retirement System (MPERS) in 2006, based on a finding that his degenerative disc disease and related symptoms would not permit the continued performance of his work as a corrections officer, only less intensive, "light duty work." (R. 1063 – 65, ECF No. 10-11.) Thereafter, in 2010, MPERS continued his benefits based on its finding that he was "unable to engage in any substantial gainful activity." (R. 1061.)

The ALJ observed that the MPERS determination did not describe the applicable standard or the evidence on which it was based, and that the finding of disability was not persuasive because it was not consistent with the objective medical evidence and Plaintiff's activities of daily living. (R. 978.) The ALJ thus did not fail to consider the evidence, but rather explained the reasons she did not give the evidence weight. The record does not compel a contrary conclusion. While the ALJ was required to consider the determination, the ALJ was not required to defer to the opinion of another administrative decision maker. *Cf. Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take

---

Regarding the Evaluation of Medical Evidence, published in the Federal Register on January 18, 2017 (82 FR 5844)." 82 Fed. Reg. 15263-01, 15263 (Mar. 27, 2017).

medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."). The ALJ's decision is supported by substantial evidence on the record.[9]

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 28th day of August, 2018.

---

[9] Plaintiff also contends the ALJ failed to consider the 2011 determination of Kristen Schroeder-Cyr, NP, who, when Plaintiff applied for disability plates for his vehicle, wrote in a provider statement in support of the application that Plaintiff is "severely limited in [his] ability to walk." (Ex. 16E, R. 431, ECF No. 10-6.) The ALJ considered the opinion, but did not give it weight because it was inconsistent with the ALJ's assessment of the medical record, and because it did not address the duration for which Plaintiff could walk in an 8-hour workday. (R. 979.) The ALJ thus considered the evidence and provided a reasonable basis for her decision not to adopt the finding.